Our last case this morning is Mobile Acuity Ltd. v. Blippar Ltd. v. Blippar. This is 2020-2016. Good morning, Mr. Ruttenberg. Good morning, Your Honor. May I proceed? Please proceed. May it please the Court, my name is Guy Ruttenberg for the Appellate Mobile Acuity. I'm from the law firm of Ruttenberg IP Law. I think this case presents an opportunity to look at what allegations of inventiveness must be considered particularly in the context of a Rule 12b6 motion on the please for a 101 motion. Don't the claims simply decide passing information back and forth? I don't think so. Which is an abstraction. I don't think so, Your Honor. I think claims do more than that. And I think you have to look at the specification and I think you have to look at the allegations in the complaint to understand that. The district court in this case construed the claims, or not construed the claims characterized the claims as abstract because the district court found and the appellee argues that the claims are directed to the abstract idea of leaving information at a location or object for one's future reference. That cannot be correct. The reason we know that cannot be correct is because there's an entire disclosure that explains how this invention is different from the prior art and what the district court is saying here would capture the prior art that this is distinguishing. What the specification discloses and the claims then recite is something that says, okay, in the prior art, what we had is, we had the ability to leave information so that it could be used in the future. But what we had to do in the prior art is we had to use a visual cue. We all remember there were barcodes. If you wanted to associate information you had a barcode and so if there was an object that you wanted to associate through imagery, you have to go in advance, mark that with a barcode and then you would match things up with a barcode or some other type of visual cue that was unsightly, that was expensive, sometimes it required licensing of technology. What this patent does and what's explained in the specification, what's alleged in some detail, what these inventors did is they realized that they could match images that are uploaded by users by using the object itself as the trigger. We don't need to use a barcode. We don't need to license the technology for that kind of coding. What we can do is by looking at if you look at Claim 9 for example, the 618 patent, they use the term corresponding and the specification explains that this concept of correspondence is based upon looking at images from different perspectives and figuring out how to match those up. Claim 11 then goes into more detail and talks about using interest points. Interest points are then explained in the specification as being very specific ways of pulling information from the pixels so that you can then compare them from different perspectives. You never expressly ask the district court to construe for purposes of 101 corresponding or interest points. Never said here is what construction we need and never argued what difference it would make and how it would make the claims now have an inventive concept. The closest you come is in your proposed third amendment complaint but you don't even do all of what I just suggested at that point. How does all of what you just said about the specification even become relevant to our 101 analysis? What we said in the complaint to begin with is what the inventive concept is. What we said is that the way you accomplish the invention the entire point of this invention was to get rid of the barcodes, to get rid of those visual cues. That's in our second amendment complaint which is the operative one. Is it in claim 9? We believe so. It's in claim 9 through the word corresponding. Why didn't you timely propose a construction that got that supposed inventive concept into the word corresponding in claim 9? I think we did. During oral argument when the court asked are there any claim constructions we said we believe we can amend and we can do so by explaining what correspondence means and we can do so by explaining what interest points means. In the Ninth Circuit what the Ninth Circuit says, Your Honor, is that if leave to amend is denied on the grounds of futility, and we did ask for leave to amend, then that's reviewed de novo and the way you essentially look at it is you have to look at the third amendment complaint to see whether there's anything new in there anyway because if there was then the court should have allowed it. So in our third amendment complaint we're even more explicit in pointing to the Ninth Circuit. They should have allowed it potentially if it would have made a difference under step 1 or step 2. Where do you explain what difference your supposed proposed constructions in the third amendment complaint would have made? I think we explained that in the briefing below and I think we also explained it in the complaint itself where we explained the way you have to look at this claim we said all along even from our very first complaint that this invention here is different than just leaving information so it can be used for purposes of future use. From the very first complaint what we said is this invention is about getting away from visual cues and the way you do that is by looking at correspondence in Claim 9 interest points in Claim 11 Claims 14 and 15 getting to more specifics about I said 14 and 15 I don't see that 15 was ever mentioned in any of the papers I think what we said your honor we said Claim 14, I think we said 11, 14, 15 I thought we said 16 as well I don't remember I just want to be sure of what universe we're talking about here 11 and 14 are both patents yes they are but 15 I would have to check your honor I apologize I think when it comes to representative claims one of the things that we said is the defendant in this case at the lower court had a footnote the defendant's brief focused on Claim 9 only and they had a footnote that said basically we think this is true for all claims and what we said in the lower court is we don't think that's enough to even shift the burden to us to say anything about all of the claims what we did do is we said we think the other claims are different we haven't agreed that the other claims are the same we haven't agreed that anything is representative there was no stipulation the district court went on to discuss at least claims 11, 14, and 16 plus 9 I think from both patents the district court did so did you ever call out any material differences with any other claims I don't think any other claims were discussed by the district court or the defendant how about by the plaintiff I don't think the other claims were discussed by anyone other than the ones you mentioned I'm sorry I just wanted to know what's wrong then with how the district court handled well I think I think I start with 35 U.S.C. 282a which says each dependent claim or each claim is presumed valid separately and so to come forward and say through a footnote that we're now challenging all claims I don't think that meets the burden of proof to invalidate claims that are unmentioned by anybody it puts you on notice that all the claims are at issue in their motion it puts us on notice potentially but I don't think it shifts the burden I agree that it puts us on notice but the question who has the burden I think is an important one especially when you're talking about an affirmative defense at the pleading stage the fact that someone can say we think this implicates all claims I don't think that meets the requirement for clear and convincing evidence to invalidate claims that you haven't even mentioned whether by the because essentially the order here invalidates all claims including means plus function claims that it's not clear if they were asserted that no one's even addressed there's a broad order here saying all claims are essentially invalid without addressing claims that maybe didn't even come up and I think that's problematic I think that sort of puts the burden on the patent holder to defend a patent to defend claims at the pleading stage that may have not been challenged or asserted at this point I think that's potentially problematic but I think going back to what the district court said I think from the very first complaint if we look at the district court's formulation of this abstract idea the formulation the district court has come up with is that we're just collecting information that was left before and I think that's entirely divorced from what's described in the patent and it's entirely divorced from the allegations in the very first complaint What is your understanding of the term interest points as set out in the specification I think what we said the interest points are features in an image that can be extracted and used as points to calculate a homography matrix and that's described extensively in the specification the specification for example unlike cases I think obviously your honor is familiar with center link management the specification in this case is actually quite detailed it describes a way of doing something that had never been done before which is getting enabling a user to upload images and then finding within those images interest points that can then be used to compare with future images that are uploaded later Is there anything that tells us how the invention identifies interest points or is it simply a question of well there will be some points in any image that will be determined by the system to be of interest Well I think claim 14 talks about more specific ways, talks about a model user key image that you can then use to compare But again what does that mean Well I think the specification I looked at references to model user key image and I didn't see any specificity even in the specification in respect to what that is I think what that is I understood the specification is I think you use interest points that you pull out of the images for example by looking at the pixels you can pull something out if you're looking at say a diet coke can you can point to specific pixelated images that you can arrange in a certain way and then later if there's another image you can compare that arrangement of interest points to see if this is really the same image, excuse me the same product from a different perspective and a different image which essentially what that does and I think what the invention here is as alleged in the complaint is you've now taken a you have no library but you've enabled the user to upload something and share information about that particular item in the image and then when somebody in a different place a different content who doesn't know that person uploads a completely different image of the same object we can connect that information and that was just not possible before without this technology Counselor you're into your rebuttal talk you can continue or save it as you wish I will save my rebuttal Good morning your honors may it please the court Martin Bader for appellees I would like to start by focusing on the specific language of independent claim 9 of the 618 patent because what we've heard today is a lot about things that are not in that claim and when you look at the claim it's extremely simple it's performed on a conventional server it involves only 3 steps which are all directed to very conventional computer activities that this court has regularly found to be invalid under ALICE and to paraphrase the claim step 1 simply receives user defined information from a first party that can be accessed by multiple parties step 2 associating the user defined information with the portion of the first image in a database that adds to information that's already in the database so you have an image that was stored, some information now you've added to it and then the third step is providing access to that information to a second party when a second image includes a first portion that corresponds to a first image now what is noticeably not in that claim is anything about how those two images correspond to each other there's nothing in the claim about computer vision technology the server doesn't even have to do that comparison the claim doesn't even require the server to do the comparison of the two images a person sitting there could be looking at this and tell the server hey, these two images include the same things is this information in the specification and if so are the claims therefore badly drafted? I think the claims are very broadly drafted that capture a very simple concept of moving information around a server and a database that's really all that they say and so would the QR code embodiments be captured by the breadth of claim 9? I'm not sure if they would be or wouldn't be hypothetically if a picture included a barcode then maybe but there's nothing in the claim that distinguishes or specifically says that this claim is an improvement over barcode technology again, it's simply talking about a process for gathering information, putting it into a database and having a user access it the interest points? I believe it's claim 11 so let's talk about interest points the interest points were specifically addressed by the district court there's this repeated discussion that correspondence and interest points matter here first the court already found that these concepts are nothing more than another abstract idea, it's just processing of an image there's points that are then extracted from the image the other thing that I think is very key here is that when you look at the patent specification these interest points and how you determine them are specifically by the patentee referred to as the process for doing that is known in the prior art so when you look at the joint appendix at page 51 the 618 patent column 6 lines 47 to 57 the specification says various methods can be used to determine interest points for example, Hartley and Zimmerman titled multi-view geometry and computer vision from a second edition in 2003, use interest points defined by regions of minima in the image autocorrelation function interest points may also be defined using the scale invariant feature transform features but doesn't that really go more to obviousness or anticipation than to 101? I don't think so because when you look at claim if we look at claim 14 I'm sorry, claim 11 and see what that claim actually says again, all it says is extract interest points from the portion of the second image so this is a computer the server extracting an interest point so it's exactly it's using a known formula that in the prior art, this is the formula you use to extract interest points all it's doing is implementing a known formula to extract those interest points if I understand you the term interest points is really no more specific than say the term relevant information I don't think so, or portions of an image I don't think I think you're agreeing with I'm not sure I understood your answer you don't think so are you saying that interest points just means information that made by the system being used ultimately be regarded as relevant? Yes that's correct can you help me with how the representative claim question was litigated here, first of all which claims do you think that you succeeded in validating? Well your honor, I believe that all of the claims of the patents have been invalidated all claims of both patents? Both patents I'm sorry. Even though I think you would have to concede a whole bunch of them were never even mentioned by you, them, or the district court. Well, in our opening brief, we explained why claim 9 of both patents was representative of the entire patent where did you explain that? I think we asserted it in your opening brief before the district court I think that was our assertion we knew some of the claims that were being alleged to infringe it was 11 and 16, 14 has also come up and been analyzed by the court but I think 11 and 16 were actually alleged to infringe, but we didn't know if there were going to be later claims and so we took the position that claims 9 from both patents were representative of the entire of the entire patent. Now in response the plaintiff made some specific arguments regarding why claims 11, 14 and 16 of the 681 patent were different than the representative claims and why claims 11, 14, and 16 of the 648 patent to your earlier question, I don't believe claim 15 was ever discussed in the record. So these were the only claims in response to our representative claim analysis that they raised. Did they also say they dispute your contention that the two claim 9's are fully representative of all claims? They may have, but there was certainly no specific argument other than to the claims that the district court went on to specifically analyze. They didn't challenge the use of representative and the only arguments they made were specifically with respect to those dependent claims 11, 14, and 16. I'm reading from document 75, which I don't think is in the joint appendix, but it was in the record. For example, claim 11 they referred to. Similarly, claim 14, those are the two claims. Using that terminology as exemplary, not necessarily exclusive. Sure. I think the content extraction and transmission versus Wells Fargo Bank at 776 Fed 3rd 1343 Pinsite 1348 is very on point here. What that court held was that once a representative claim has been identified, then the burden is on the plaintiff to identify specific claims that are not fairly represented. That's what happened here. They identified claims 11, 14, and 16 in both patents as not being fairly representative. What the district court was not required to do was go digging through all of the other claims and trying to come up with its own arguments as to why claim 9 was not representative. Ultimately, the court says it used representative claims, but in reality, the court specifically analyzed not only the independent claims, but also didn't just say claims 11, 14, and 16 are representative and there's nothing else that matters there. The court actually looked at the contents of those claims. If you look at the court's order, the appendix, I believe it's 7 and 8 and 9. There's a slight portion that goes over to page 9. The court goes through in great detail exactly why those claims don't change the analysis under Alice. Not that don't change the representative claim argument, but the court actually says and finds that those dependent claims are invalid under Alice. The court refers to asserted claims, with a capital A and a capital C. Then earlier, appendix 5, the plaintiff alleges that these, therefore, must be the asserted claims dependents at least claims 9, etc., and then of the other patents. Are there other unasserted claims that aren't being adjudicated? As far as the case had gotten, there were not infringement allegations that went beyond those claims. Could they have alleged infringement of more? Sure. Either in a complaint or otherwise, but at that point, there were not specific infringement allegations beyond those claims. Since the invalidity is agreed with respect to the asserted claims, do the others survive? Again, I don't believe so. I believe that the court was addressing the entire patents, but at a minimum, I would say that the asserted claims were invalid. I would say that claim 14, which was specifically addressed by the court in its order. Well, I'm looking at appendix 5, and I read that appendix infringement 14 isn't listed there. Yes, Your Honor. I believe I would say at a minimum that the claims that were asserted in both patents against my client are invalid. Unless there are any other questions, I would ask that the court affirm the district court's ruling. Thank you. Mr. Ruckenberg? Yes. Just a few points in response. First of all, the fact that I think it's difficult for all of us to understand which claims are invalid and which ones aren't, I think goes to the fact that the way that the representative issue was raised here is not clear. I went back and tried to find it in the brief, and I think the point that was in appendix page 275 in the footnote where the moving party at the time said that the exact same narrative applies with respect to the subject matter of claims 11 and 16 of the two patents, and then it goes on to say that the subject matter of those two claims was found to be obvious in a different patent, which I don't think is relevant here. So I don't think You're reading from 275? 271. Yes. Do you think anything here with respect to representative claims was done differently than what we said in content extraction was okay? I do, because I think what needed to be done there was to somebody come back and say that they were I think two things. I think, number one, I think the plaintiff on that point didn't come back and say that there are other claims here that we need to look at and this is not exhaustive. I don't think that happened in content extraction, as I recall. But you came back and said, admittedly, you said, for example, but you only discussed three or maybe six, because it was three claims in each of two patents. What is the district court supposed to do if you're not going to go to the trouble of pointing out the supposedly material, patentable differences? Well, I think there's another thing at work here, which is, this is a motion to dismiss, and I think in the Ninth Circuit in particular, the Ninth Circuit has said, when it comes to the motion to dismiss phase, for an affirmative defense, I don't have to say anything as the plaintiff. The motion to dismiss should only be granted if there's nothing I could say to overcome it. This isn't a summary judgment motion. Right, but so the district court here, I think you'd have to acknowledge the patent can be looked at in connection with a motion to dismiss, right? I agree with that, but I think in the Ninth Circuit, the Ninth Circuit has been actually very strict about this issue, and the Ninth Circuit law, I think regional circuit law applies in evaluating the procedure for a motion to dismiss, and the Ninth Circuit has said, when it comes to a motion to dismiss, you really have to preclude the possibility that a claim survives in order to dismiss, and I don't see why that standard wouldn't apply to a one-to-one judgment. Why do you think that standard wasn't applied and satisfied here? The district court reviewed your patent, reviewed your allegations, and said there's nothing inventive in any of the claims anybody's talked about. Well, because I don't think it's my obligation to talk, for example, claim 21 is a means plus function claim. No one talked about that. I didn't talk about it. The other side didn't talk about it. I don't think the district court can invalidate a claim they haven't talked about. The last thing I was going to say is that even in talking about claim construction, I think part of the argument that the appellee made below and is making here is we're not sure what the claim construction is. There was an implied claim construction that the claims would cover even what a human being does. I think the appellee wasn't sure whether the claim would cover the QR code. We think it wouldn't, but inherent in that discussion is a claim construction. Lastly, on the conventional idea that you have to look at whether this is conventional, I agree that's a prior art invalidity issue, and it's not part of a step one analysis as to whether the claims are abstract. Thank you.